UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAKEISHA ELLIS,<br><br>    Plaintiff,<br><br>    v.<br><br>GEORGETOWN UNIVERSITY HOSPITAL,<br><br>    Defendant. | Civil Action No.  08-1174 (JDB) |

## MEMORANDUM OPINION

Plaintiff Lakeisha Ellis brings this action against her former employer, Georgetown University Hospital ("Georgetown" or the "Hospital"), alleging disability discrimination and retaliation in violation of federal anti-discrimination laws and the District of Columbia Human Rights Act ("DCHRA").  Now before the Court are Georgetown's motion for partial dismissal of plaintiff's amended complaint or, in the alternative, for summary judgment and Ellis's motion for leave to file a second amended complaint.[1]  In its motion, Georgetown contends that Ellis's retaliation claims should be dismissed because she failed to exhaust her administrative remedies.  Georgetown also asserts that Ellis's retaliation claim under the DCHRA is barred by the relevant statute of limitations.  Ellis opposes Georgetown's motion, arguing that her retaliation claims are not defective and should be allowed to proceed.  With respect to her own motion, Ellis portrays her proposed second amended complaint as simply a clarification of her existing claims.

---

[1] Ellis also filed a motion to supplement authority supporting her retaliation claim under DCHRA as timely filed.  In resolving Georgetown's motion for partial dismissal, the Court did not consider the supplemental authority cited in plaintiff's motion.  Therefore, the Court will deny plaintiff's motion to supplement authority as moot.

Georgetown views it quite differently, however, arguing that Ellis is attempting to allege new claims and legal theories, which should be rejected at this stage of the litigation because discovery is closed and summary judgment briefing is set to begin. For the reasons discussed below, the Court will deny Georgetown's motion and it will grant Ellis's motion.

## BACKGROUND

Ellis was employed by the Hospital as a patient financial associate from approximately May 11, 2006 until she was terminated on August 2, 2006. Am. Compl. ¶¶ 14, 25. On October 17, 2006, Ellis wrote a letter to Tracy L. Smalls of the Equal Employment Opportunity Commission ("EEOC") detailing the events surrounding her termination. Pl.'s Ex. 2 (Oct. 17, 2006 letter from Ellis to EEOC). Soon thereafter, Ellis completed an EEOC Intake Questionnaire, which was accompanied by a copy of her October 17 letter. Pl.'s Ex. 1 (Oct. 25, 2006 EEOC Intake Questionnaire); Pl.'s Mem. in Opp'n to Def.'s Mot. for Partial Dismissal of Pl.'s Am. Compl. or, in the Alternative, for Summ. J. ("Pl.'s Opp'n") at 5. In responding to the questionnaire, Ellis checked the box indicating her belief that she had been discriminated against because of her disability. Pl.'s Ex. 1 at 3. She did not, however, check the box indicating that she had been subject to retaliation. Id. On December 13, 2006, Ellis filed a formal Charge of Discrimination against the Hospital with the EEOC. Pl.'s Ex. 3 (Dec. 13, 2006 EEOC Charge of Discrimination). Once again, Ellis marked the box alleging that the Hospital had discriminated against her based on her disability, but she did not mark the box alleging that she had been the victim of retaliation. Id. Although not explicitly mentioned in her EEOC charge, Ellis has asthma, and it is this condition that she identifies as her putative disability. Am. Compl. ¶¶ 16, 31-32, 41-42, 53, 57.

In her formal charge, Ellis describes the particulars of her termination as follows. On July 25, 2006, Ellis was asked by her supervisor, Fannice Beckett, to work temporarily in the Emergency Department ("ED") for training purposes. Pl.'s Ex. 3. While working in the ED, Ellis "began to experience a sudden onset of symptoms that brought about complications with" her asthma. Id. After being examined by a physician in the ED and her primary care physician, she was informed that she "would no longer be able to work in the [ED] because of" her asthma and her doctor provided a note to that effect. Id. Ellis provided this information to Beckett and several days later, on July 31, 2006, she met with Beckett and the Department Director, Cindy Hecker, "to discuss if they had chosen to make accommodations" with respect to her asthma and her request to work outside of the ED. Id. Hecker then told Ellis "that the company could keep [her] or let [her] go based on the restrictions outlined by [her] primary care physician." Id. On August 2, 2006, just two days after her conversation with Beckett and Hecker, Ellis's employment was terminated. Id.

At the conclusion of its investigation of her formal charge, the EEOC issued a Right to Sue Letter on April 4, 2008 and this action followed on July 7, 2008. In November 2008, Ellis moved for leave to amend her complaint, which was granted by the Court on December 11, 2008. Several weeks later, defendant filed its motion for partial dismissal of the amended complaint or, in the alternative, for summary judgment.[2] While that motion was pending, the parties proceeded with discovery and on May 14, 2009, one day before the close of discovery, Ellis filed her motion

---

[2] Because all documents and exhibits pertinent to this motion were either specifically referenced in Ellis's amended complaint or form the procedural prerequisite to this action, the Court considers this motion under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 56. See Clifton v. Fed. Nat'l Mortgage Ass'n, No. 97-2302, 1998 WL 419741, at *1 (D.D.C. Jan. 14, 1998).

for leave to file a second amended complaint.

## LEGAL STANDARD

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. District of Columbia Office of the Mayor, --- F.3d ---, 2009 WL 1515373, at *6 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534

U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement."  Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations").

## ANALYSIS

I.  **Georgetown's Motion to Dismiss Ellis's Retaliation Claims**

   A.  **Exhaustion of Administrative Remedies**

Before bringing suit in federal court, ADA and Rehabilitation Act plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it.  42 U.S.C. § 12117(a); Marshall v. Fed. Express Corp., 130 F. 3d 1095, 1098 (D.C. Cir. 1997); Johnson v. District of Columbia, 572 F. Supp. 2d 94, 102

(D.D.C. 2008). This requirement also applies to retaliation claims brought under those provisions. Johnson, 572 F. Supp. 2d at 102. An aggrieved party must file a charge with the EEOC alleging that his or her employer has engaged in an unlawful employment practice. The claimant must then proceed through the administrative process. "The employee may commence a civil action against her employer if, and only if, the EEOC has dismissed the administrative complaint or has itself failed to begin a civil action within 180 days of the original EEOC filing." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005) (citing 42 U.S.C. § 2000e-5(f)(1)). "A vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace" because that would "circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." Marshall, 130 F. 3d at 1098 (internal quotation marks omitted). Hence, a claimant may only challenge in federal district court those allegations that were contained in the EEO complaint or those that are "like or reasonably related to the allegations of the charge." Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted).

Georgetown contends that Ellis has not properly exhausted her retaliation claims because her December 13, 2006 EEOC charge contained only a claim for disability discrimination. Def.'s Mem. in Supp. of Mot. for Partial Dismissal of Pl.'s Am. Compl. or, in the Alternative, for Summ. J. ("Def.'s Mem.") at 1-2. According to Georgetown, Ellis's formal EEOC charge "is devoid of any reference to a claim of retaliation" and, moreover, she "failed to check the box for 'retaliation' in either her Charge or Intake Questionnaire, both of which clearly provide retaliation as one of the possible claims that she could have asserted." Id. at 6. In response, Ellis largely avoids addressing the sufficiency of her formal EEOC charge itself -- arguing instead that she

raised her retaliation claim in her October 17, 2006 letter to the EEOC, which was submitted with her Intake Questionnaire, and that any omission of such a claim from her formal charge was a mistake on the part of her EEOC case manager. See Pl.'s Opp'n at 2-6. Ellis does assert, however, that "[t]he retaliation claim in this case grew directly from Plaintiff's termination of employment in relationship to her request for accommodations." Id. at 6. She also contends that "[t]he facts outlined in the documents that make up the charge sufficiently set forth the [retaliation] claim, and the fact that the box is not checked should not preclude this claim from going forward." Id.

As an initial matter, "[w]hile the boxes aid a claimant in identifying the nature of her charge, a claimant is not necessarily limited to the boxes she selected if she provides the basis for her claim in her written explanation." Robinson-Reeder v. Am. Council Educ., 532 F. Supp. 2d 6, 13 (D.D.C. 2008); see also Maryland v. Sodexho, Inc., 474 F. Supp. 2d 160, 162 (D.D.C. 2007) (explaining that while the EEOC charge form makes it easy to identify the nature of the charge "with its boxes that an employee can merely check," an employee "need only describe it in the text of the charge form" if he is unsure which box applies). Because Ellis failed to select the "Retaliation" box in her formal EEOC charge, the Court must examine her written explanation. See Pl.'s Ex. 3. Although Ellis does not specifically mention "retaliation," the Court's task is not to search for magic words -- it must parse the substance of the allegations to determine whether they "fairly embrace" a retaliation claim. Marshall, 130 F. 3d at 1098.

In pertinent part, the ADA prohibits an employer from retaliating against "any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). The Rehabilitation Act does not, by its terms, prohibit retaliation, but it does

incorporate the "remedies, procedures, and rights" of Title VI, which does. <u>Alston v. District of Columbia</u>, 561 F. Supp. 2d 29, 40 (D.D.C. 2008). To establish a prima facie case of retaliation under the ADA or the Rehabilitation Act, Ellis must show that she engaged in protected activity, that the Hospital subjected her to an adverse employment action, and that there is a causal link between the adverse employment action and the protected activity. <u>Smith v. District of Columbia</u>, 430 F.3d 450, 455 (D.C. Cir. 2005). Although she was not required to allege facts sufficient to make out a prima facie case of retaliation in her EEOC charge -- and, indeed, is under no such pleading obligation even with respect to her complaint in this case, <u>see</u> <u>Swierkiewicz</u>, 534 U.S. at 510-11 (rejecting the creation of a heightened pleading standard in discrimination cases that would require plaintiffs to plead the elements of a prima facie case) -- careful examination of her charge reveals that Ellis did allege facts sufficient to do so.

First, following her illness in late July 2006, Ellis alleges that she spoke to her supervisor, Fannice Beckett, and informed her that, after consulting with her doctor, she "would not be able to work in the Emergency Department because of how it affects the symptoms of [her] disability." Pl.'s Ex. 3. She further alleges that just days later, on July 31, 2006, she "was called into a meeting with Fannice Beckett and the Department Director, Cindy Hecker, to discuss if they had chosen to make accommodations" for her with respect to her asthma and her request to work outside of the Emergency Department. <u>Id.</u> Hence, as alleged in her EEOC charge, Ellis made a request for an accommodation -- not to work in the Emergency Department -- based on her putative disability. "Requests for accommodation are 'protected activities' within the meaning of the ADA." <u>DuBerry v. District of Columbia</u>, 582 F. Supp. 2d 27, 37 (D.D.C. 2008); <u>see also</u> <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 190-91 (3d Cir. 2003) (explaining

that the ADA protects those who request accommodations from retaliation); Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997) ("It would seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge."). Second, Ellis plainly alleges that she was subjected to an adverse employment action because she was "terminated from [her] position" soon after requesting an accommodation.[3] Pl.'s Ex. 3. Finally, the temporal proximity of Ellis's termination to her accommodation request -- just two days later -- is sufficient to establish the necessary causal link between the adverse employment action and the protected activity. See, e.g., Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007) (stating that temporal proximity can support an inference of causation where the two events are "very close" in time).

In view of these allegations, the Court concludes that the facts set forth in Ellis's December 13, 2006 EEOC charge, while not labeled as such, were nevertheless sufficient to raise a retaliation claim.[4] Consequently, the Court rejects Georgetown's contention that Ellis failed to exhaust her administrative remedies with respect to her retaliation claim because the allegations contained in her EEOC charge "fairly embrace" such a claim.

---

[3] Georgetown asserts that the denial of Ellis's accommodation request does not constitute an adverse employment action sufficient to support a claim for retaliation. See Def.'s Reply in Supp. of Mot. for Partial Dismissal of Pl.'s Am. Compl. or, in the Alternative, for Summ. J. ("Def.'s Reply") at 2-3. That argument misses the point because Ellis has alleged that her termination -- not the denial of her accommodation request -- constitutes the adverse employment action here.

[4] The parties disagree whether, and to what extent, the Court should consider documents beyond Ellis's formal December 13, 2006 EEOC charge in resolving the question whether she properly exhausted her retaliation claims. Compare Def.'s Mem. at 4-9 with Pl.'s Opp'n at 2-4. Because the Court concludes that the description contained in Ellis's formal EEOC charge was sufficient to identify her retaliation claim for exhaustion purposes, it need not look beyond that document.

### B.   Statute of Limitations -- DCHRA Retaliation Claim

Under the D.C. Human Rights Act, an employee must file a private cause of action against an employer "in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16. Here, the alleged discriminatory act that serves as the basis for Ellis's DCHRA retaliation claim is the termination of her employment with the Hospital on August 2, 2006. Because Ellis commenced this action on July 7, 2008 -- well outside of the one-year limitations period -- she must rely upon the DCHRA's tolling provision to preserve her claim.

When a charge of discrimination is filed with the EEOC in the District of Columbia, a claim is automatically cross-filed with the D.C. Office of Human Rights ("DCOHR") pursuant to a "worksharing agreement" between the two agencies. 29 C.F.R. § 1601.13(a)(4)(ii)(A); see Carter v. George Washington Univ., 387 F.3d 872, 879 (D.C. Cir. 2004). Pursuant to D.C. Code § 2-1403.16(a), "[t]he timely filing of a complaint with the [DCOHR] . . . shall toll the running of the statute of limitations while the complaint is pending." Cases interpreting this provision have established that the timely filing of a charge with the EEOC, and the automatic cross-filing of a claim with the DCOHR that follows, is sufficient to toll the one-year statute of limitations for filing a claim under the DCHRA. See Zelaya v. UNICCO Serv. Co., 587 F. Supp. 2d 277, 283 (D.D.C. 2008); Ibrahim v. Unisys Corp., 582 F. Supp. 2d 41, 45 (D.D.C. 2008); Ware v. Nicklin Assocs., Inc., 580 F. Supp. 2d 158, 164 (D.D.C. 2008); Esteños v. PAHO/WHO Fed. Credit Union, 952 A.2d 878, 886 (D.C. 2008).

Ellis filed her EEOC charge on December 13, 2006, just over four months after the alleged retaliatory act (her termination) occurred. Her charge was pending with the EEOC -- and

the DCHRA statute of limitations was tolled by virtue of the cross-filing of a claim with the DCOHR -- until April 4, 2008 when the EEOC issued a Right to Sue Letter. A little over three months later, on July 7, 2008, this action was commenced. Hence, by the time Ellis filed suit, less than eight months had elapsed for statute of limitations purposes and, accordingly, her DCHRA retaliation claim appears to have been timely filed. Nevertheless, Georgetown contends that Ellis's claim was not timely filed and relies, primarily, upon the argument that Ellis never raised a retaliation claim of any sort in her EEOC charge. Pl.'s Reply at 6-8. In Georgetown's view, then, Ellis cannot receive the benefit of tolling for a claim that she never raised in the first instance.[5] As discussed above, however, the Court rejects that argument in the exhaustion context and it does so again here. Therefore, Ellis's DCHRA retaliation claim is not barred by the one-year statute of limitations.

**II.     Ellis's Motion for Leave to File a Second Amended Complaint**

On May 14, 2009, the day before discovery closed, Ellis filed a motion for leave to file a second amended complaint. According to Ellis, she seeks leave to amend her complaint for a second time "solely for the purpose of clarifying her claims and to comport the allegations in the Complaint with the discovery that was recently completed." Pl.'s Mem. in Supp. of Mot. for Leave to File Sec. Am. Compl. ("Pl.'s Mem.") at 1. Ellis asserts that Georgetown will not be prejudiced by the filing of her proposed second amended complaint because it is based on discovery already produced, will not require any additional discovery, and does not seek to add

---

[5] Georgetown also asserts that Ellis fails to raise a retaliation claim under the DCHRA in her amended complaint. See Def.'s Mem. at 2 n.1; Def.'s Reply at 7-8. Although the DCHRA is not expressly referenced in the retaliation count of her amended complaint, see Am. Compl. ¶¶ 56-71, a fair reading of the allegations associated with Ellis's DCHRA claim, see id. ¶¶ 29-38, demonstrate that she has pled a claim for retaliation under that provision.

additional claims -- it merely clarifies existing ones. Id. at 3-6; see Pl.'s Reply in Supp. of Mot. for Leave to File Sec. Am. Compl. ("Pl.'s Reply") at 2-8. She contends, then, that her motion should be granted under the liberal standard of Fed. R. Civ. P. 15. Pl.'s Mem. at 2-3.

Georgetown characterizes Ellis's proposed second amended complaint quite differently, claiming that it is the product of undue delay and will result in unfair prejudice. Def.'s Opp'n to Pl.'s Mot. for Leave to File Sec. Am. Compl. ("Def.'s Opp'n") at 1. Georgetown asserts that it will be prejudiced because Ellis's latest proposed amendments are not mere clarifications, but "are entirely new legal theories that would require additional discovery." Id. at 2. According to Georgetown, Ellis now claims, for the first time, that (i) she has a "record of impairment" qualifying her as disabled under the ADA, the Rehabilitation Act and the DCHRA, (ii) Georgetown "regarded her as" disabled in violation of those statutes, and (iii) Georgetown retaliated against her in violation of the DCHRA. Id. at 1-2. In Georgetown's view, then, it "should not be required to expend additional resources solely because Plaintiff has come up with a few new legal theories" at the close of discovery. Id. at 2.

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend is freely granted "when justice so requires." "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). In particular, when "an amendment would do no more than clarify legal theories or make technical corrections," leave is often granted. Harrison v. Rubin, 174 F.3d 249, 253 (D.C. Cir. 1999). In the Court's discretion, leave to amend may be denied when the Court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman, 371 U.S. at 182.

"'The key issue in considering a motion to amend is whether the non-movant will suffer any prejudice from the amendment.'" Clark v. Feder Semo & Bard, P.C., 560 F. Supp. 2d 1, 3 (D.D.C. 2008) (quoting Nurriddin v. Goldin, 382 F. Supp. 2d 79, 91-92 (D.D.C. 2005)); see also Djourabchi v. Self, 240 F.R.D. 5, 13 (D.D.C. 2006) (describing prejudice to the opposing party as the "most important factor the Court must consider when deciding whether to grant a motion for leave to amend").  Here, Georgetown contends that both the timing (at the close of discovery) and the nature (introducing new legal theories) of the proposed amendments jeopardize its ability to defend this case.  See Def. Opp'n at 9.  Georgetown concedes, however, that any potential prejudice would be ameliorated by supplemental discovery related to, what it characterizes as, Ellis's "new" claims.  Id. at 10-11.  Nevertheless, Georgetown asserts that the need for additional discovery alone, along with the accompanying time and expense to complete such discovery, is sufficient grounds to warrant denial of Ellis's motion.[6]  Id. at 9-11.

After a careful examination of Ellis's proposed second amended complaint, and all of the

---

[6] Georgetown cites two cases in support of its argument that the need for additional discovery is a sufficient basis upon which to deny leave to amend, but both of those cases are easily distinguishable and involve denials of leave to amend premised on more than the need for additional discovery.  See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 246-48 (D.C. Cir. 1987) (affirming the denial of a motion for leave to amend where the amendment attempted to raise an entirely new issue and the motion was made seven years after the initial complaint was filed, after the parties had conducted extensive discovery and after the district court had granted summary judgment against the movant); Equity Group, Ltd. v. Painewebber, Inc., 839 F. Supp. 930, 932 (D.D.C. 1993) (denying motion for leave to amend where it was "merely a tactic designed to evade summary judgment" because the motion was filed several months after the close of discovery and after the filing of defendant's dispositive motion).

relevant factors identified by the parties, the Court concludes that -- at this stage of the litigation, prior to the commencement of briefing on summary judgment -- there has been no undue delay by Ellis in seeking leave to amend and, critically, that there will be no undue prejudice to Georgetown if leave to amend is granted. The prejudice to the Hospital at this time, if any, is minimal and it simply does not override the liberal standard that this Court must apply when determining whether to grant leave to amend under Fed. R. Civ. P. 15.[7] The Court does, however, agree with Georgetown that before summary judgment briefing can commence, at least some additional discovery is appropriate in light of the nature of the amendments, even if the parties disagree whether Ellis has, in fact, raised any new claims. Therefore, the Court will reopen discovery for a period of sixty days to allow Georgetown to seek additional discovery related solely to the new claims (or theories) contained in Ellis's second amended complaint.

## CONCLUSION

For the foregoing reasons, the Court will deny Georgetown's motion for partial dismissal of plaintiff's amended complaint or, in the alternative, for summary judgment and it will grant Ellis's motion for leave to file a second amended complaint. A separate Order accompanies this Memorandum Opinion.

---

[7] In addition to alleging undue delay and undue prejudice, Georgetown also argues that leave to amend should be denied because Ellis's proposed amendments are futile. Def.'s Opp'n at 11-12. The amendments are futile, according to Georgetown, because Ellis disregarded Local Civ. R. 7(m) by failing to seek opposing counsel's consent before filing her non-dispositive motion and hence are "subject to a motion to dismiss." Id. at 11. Although Ellis's counsel concedes that she failed to follow Local Civ. R. 7(m), see Pl.'s Reply at 8-9, the Court does not find plaintiff's motion to be futile based upon this procedural deficiency because Georgetown's counsel indicated her opposition to the motion at a status conference with the Court just hours after the motion was filed. It is fair to assume, then, that Georgetown's counsel would have indicated the same had she been contacted on the previous day, prior to the filing of the motion.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Dated:   July 6, 2009