UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAKEISHA ELLIS,

    Plaintiff,

    v.

GEORGETOWN UNIVERSITY
HOSPITAL,

    Defendant.

Civil Action No. 08-1174 (JDB)

## MEMORANDUM OPINION

Lakeisha Ellis, a former Georgetown University Hospital employee, brings this action for discrimination and retaliation pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 et seq. She contends that Georgetown discriminated against her because she suffered from asthma, and that it retaliated against her when she requested an accommodation for that condition. Before the Court is Georgetown's motion for summary judgment on both claims. Upon careful consideration of the parties' memoranda, the applicable law, and the entire record herein, and for the reasons set forth below, the Court will grant in part and deny in part Georgetown's motion.

## BACKGROUND

Ellis suffers from asthma, which was diagnosed approximately ten years ago. See Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") [Docket Entry 45], Ex. 2 (Dep. of Lakeisha

Ellis ("Ellis Dep.")), 138:1-2.[1]  She experiences asthma attacks once every six or seven months, see Def.'s Mem., Ex. 6 (Ellis Pre-Employment Health Screening Form), 1, but indicates that her prescribed asthma inhalers control her symptoms, see Ellis Dep. at 59:11-13.

In May 2006, Ellis was hired to work as a Patient Financial Associate at Georgetown University Hospital.  See id. at 25:8-11.  This position required her "to register patients in several departments of the Hospital," including the Emergency Department, see Def.'s Mem., Ex. 10 (Decl. of Cynthia Hecker), ¶ 2, and obligated her to obtain a patient's personal and insurance information and enter it into Georgetown's computer system, see Ellis Dep. at 32:15-33:4.  On July 25, 2006, Ellis suffered an asthma attack while working in Georgetown's Emergency Department.  See id. at 75:12-18.  The symptoms dissipated after she used her inhaler.  See id. at 232:12-19.

The next day, Ellis visited her primary care physician for an unrelated matter -- she was suffering from gastroenteritis and pancreatitis.  See id. at 84:2-16; see also Def.'s Mem., Ex. 18 (Dep. of Ellen Finkelman ("Finkelman Dep.")), 15:10-22.  Due to Ellis's stomach ailments, Dr. Finkelman told her to "stay off work for five days."  Finkelman Dep. at 16:2.  At Ellis's request, Dr. Finkelman also wrote a note recommending that Ellis "not work in the emergency department as this is too high an exposure to many sick patients and puts her at risk for her own health."  Id. at 16:10-13.

Later that evening, Ellis called one of her supervisors at Georgetown, Fannice Beckett, and told her that she would be out of work for a few days due to illness.  See Ellis Dep. at 105:1-

---

[1] Where both parties have submitted excerpts of the same deposition in support of their motions, the Court has cited only to the transcript filed by Georgetown.

6. Ellis also advised Beckett of Dr. Finkelman's recommendation that Ellis no longer work in the Emergency Department due to her asthma. See id. According to Ellis, Beckett responded that Ellis and the hospital must "part ways if [Ellis] was not able to work in the emergency room." See id. at 105:10-12. Nevertheless, Beckett did not terminate Ellis over the phone, and instead instructed her to bring the note from her doctor when she returned to work. See id. at 105:15-19. When Ellis returned to the hospital on July 31, she met with Beckett and another one of her supervisors, Cindy Hecker, who informed Ellis that once she was deemed fit to return to duty by Employee Health Services, Georgetown would decide whether they could fulfill Ellis's request for an accommodation. See id. at 111:3-7.

Employee Health Services cleared Ellis to return to work on August 1, but noted that she could no longer work in the Emergency Department. See Def.'s Mem., Ex. 22 (Employee Health Service Statement of Work Status). The parties disagree about what happened next. According to Ellis, Beckett gave her the option of either waiting in the hospital or returning home while the hospital decided whether it could accommodate her. See Ellis Dep. at 117:10-13. According to Beckett, however, she only told Ellis to wait in the hospital while Georgetown resolved Ellis's request for accommodation. See Def.'s Mem., Ex. 11 (Dep. of Fannice Beckett), 69:20-70:4. Whatever the case, the parties agree that Beckett instructed Ellis to be available to meet once Georgetown made its accommodation decision. See id. at 69:20-70:1.

Based on what she remembers Beckett telling her, Ellis decided to take the metro home. See Ellis Dep. at 124:17-21. When a supervisor contacted her by phone and told her to return to work, Ellis stated that she had just exited the metro, and that she would need to drive back to the hospital since she lacked the funds to return via the metro. See id. at 125:10-18, 217:14-19. It

took almost three hours for Ellis to drive back to Georgetown, given that it was "very, very congested." Id. at 125:19-126:8.

The following day, Beckett terminated Ellis "for misconduct." Def.'s Mem., Ex. 1 (Aug. 2, 2006 Termination Letter). Specifically, Beckett wrote that Ellis had failed to follow Beckett's instructions to remain at the hospital while waiting for an accommodation decision. See id.[2] Ellis thereafter filed this action alleging discrimination and retaliation in violation of the ADA, the Rehabilitation Act, and the DCHRA.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all

---

[2] Beckett also stated that Ellis had failed "to report [to Beckett] that the Human resources representative strongly recommended that you report back to your work assignment since you were cleared by Employee Health Services on August 1, 2006." Aug. 2, 2006 Termination Letter. According to Georgetown, Ellis's misconduct was a fireable offense because she was a probationary employee, which meant that she could be terminated whenever "the department determines that [her] behavior [was] unacceptable." See Def.'s Mem., Ex. 8 (Probationary Employment Policy), 1.

evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Thus, the non-moving party cannot rely on mere speculation or compilation of inferences to defeat a motion for summary judgment. See Hutchinson v. Cent. Intelligence Agency, 393 F.3d 226, 229 (D.C. Cir. 2005). Nor can the non-moving party rely on hearsay statements or conclusory statements with no evidentiary basis to establish a genuine issue of material fact. See Assoc. of Flight Attendants v. Dep't of Transp., 564 F.3d 462, 465 (D.C. Cir. 2009). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Moreover, a moving party may succeed on summary judgment by pointing to the absence of evidence proffered by the non-moving party. See Celotex, 477 U.S. at 322; see also Anderson, 477 U.S. at 252 (summary judgment appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]").

**ANALYSIS**

**I.     Disability Discrimination**

To bring a claim for disability discrimination under the ADA, the Rehabilitation Act, or the DCHRA, a plaintiff must demonstrate that she is disabled within the meaning of the statute. See Adeyami v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (ADA); Adams v. Rice, 531 F.3d 936, 943 (D.C. Cir. 2008) (Rehabilitation Act); Chang v. Inst. v. Public-Private P'ships, Inc., 846 A.2d 318, 324 (D.C. 2004) (DCHRA). A person is disabled under the ADA if she (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (2) has "a record of such an impairment"; or (3) is "regarded as

having such an impairment." 42 U.S.C. § 12102(1). The ADA's definition also applies to suits brought under the Rehabilitation Act. See Thompson v. Rice, 422 F. Supp. 2d 158, 166 n.6 (D.D.C. 2006) ("The liability standards of the Rehabilitation Act and the ADA are the same in employment discrimination cases, and thus cases interpreting either statute are applicable in defining the term disability and otherwise determining liability.").[3] And because that definition is substantially similar to the DCHRA's definition of disability, see D.C. Code § 2-1401.02, the ADA's definition of "disability" is "persuasive" in construing the DCHRA, see Grant v. May Dep't Stores Co., 786 A.2d 580, 583 (D.C. 2001). Here, the evidence demonstrates that Ellis is not disabled under the law, and therefore she cannot bring a disability discrimination claim.[4]

    A.    <u>Physical or Mental Impairment that Substantially Limits a Major Life Activity</u>

Ellis contends that she is disabled because she has a physical impairment -- asthma -- that

---

[3] Significant changes to the ADA and the Rehabilitation Act took effect on January 1, 2009, after the events under review took place. See ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008). The D.C. Circuit has held that "the Amendments do not apply retroactively." Lytes v. D.C. Water and Sewer Auth., 572 F.3d 936, 938-42 (D.C. Cir. 2009). Hence, this Court will apply the pre-amendment law to determine whether Ellis is an "individual with a disability." Id. at 942.

[4] As a general matter, where, as here, "an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action," a Court conducts a single inquiry: "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." Adeyemi, 525 F.3d at 1226. But the question whether Ellis is disabled is a predicate to bringing a claim of discrimination. Cf. Sutton v. United Air Lines, Inc., 527 U.S. 471, 488-89, 494 (1999) (upholding dismissal of an ADA action for failure to state a claim where the plaintiffs failed to adequately allege how their impairment substantially limited them in a major life activity); Mitchell v. Yates, 402 F. Supp. 2d 222, 228 (D.D.C. 2005) ("[P]laintiff's complaint must adequately allege facts sufficient to support the claim that he has a "disability" within the meaning of the ADA, or else be subject to dismissal."). Therefore, the Court may properly grant Georgetown's motion for summary judgment if Ellis is not disabled.

substantially limits the major life activity of breathing.  See Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") [Docket Entry 47], at 19.  But "merely having an impairment does not make [an individual] disabled for the purposes of the ADA."  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002).  Rather, the word "substantially" suggests "considerable" or "to a large degree," and thus "clearly precludes impairments that interfere in only a minor way."  Id. at 196-197.  Therefore, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that . . . 'substantially limits' a major activity."  Sutton, 527 U.S. at 482-83; accord Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565 (1999).

Here, Ellis concedes that her asthma is well controlled by medication.  See Ellis Dep. at 59:11-13 ("Q: Those medications that you were taking controlled your asthma, right?  A: Yes."); see also id. at 257:2-9 (asthma symptoms never last longer than five to ten minutes when she uses her medication).  Her expert, Dr. Steven Lerner, agrees: "I also felt that she was well controlled on her current regimen."  Def.'s Mem., Ex. 3 (Dep. of Steven Lerner), 35:13-14.  So too does Georgetown's expert, Dr. Daniel Ein: "After thoroughly reviewing all of the above information, it is my opinion that Ms. Ellis did have chronic asthma at that time but that it was well controlled."  Def.'s Mem., Ex. 25 (Expert Report of Dr. Daniel Ein), 2; see also Def.'s Mem., Ex. 26 (Amended Expert Report of Dr. Daniel Ein), 2 (same).[5]

---

[5] To be sure, Ellis recounts that Dr. Ein "testified that he concluded that the Plaintiff's asthma was not well controlled because Prednisone . . . had been prescribed to Plaintiff for more than six months."  Pl.'s Opp'n at 4.  Although this is true, it is of no moment.  Dr. Ein responded to a question about what a prescription of prednisone indicates by noting that it "could indicate that the patient was not well-controlled, [or] it could indicate that the physician who was prescribing it didn't really know how to control -- how to prescribe other kinds of medicine to adequately control the patient's asthma."  Def.'s Mem., Ex. 27 (Dep. of Dr. Daniel Ein), 15:14-19.  The question did not ask Dr. Ein to evaluate Ellis's asthma, which according to his report he considered "well controlled."

Ellis never has been to the emergency room for her asthma nor has been hospitalized for an asthma attack. See Def.'s Mot, Ex. 4 (Expert Report of Dr. Steven Lerner ("Lerner Report")), 1. And she admitted that she engaged in cardiovascular exercise at least once a week, see Ellis Dep. at 61:4-6 ("Q: So in 2006 you were able to exercise weekly at least? A: Yes."); Def.'s Mot., Ex. 6 (Georgetown University Hospital Pre-Placement Health Clearance), 1 (noting that Ellis exercises at least once a week), which undermines the contention that her breathing is substantially impaired, see Boone v. Reno, 121 F. Supp. 2d 109, 111 (D.D.C. 2000); Heilweil v. Mount Sinai Hosp., 32 F.3d 718 (2d Cir. 1994); Byrne v. Board of Educ., 979 F.2d 560, 565 (7th Cir. 1992).

Moreover, "[i]f the impact of an impairment can be eliminated by changing the address at which an individual works," the impairment does not substantially limit a major life activity. Haynes v. Williams, 392 F.3d 478, 483 (D.C. Cir. 2004). Here, Ellis concedes that the conditions that trigger her asthma can be mitigated, if not eliminated, by working at any location in the hospital other than the Emergency Department. See Ellis Dep. at 139:5-8 ("Q: Other than working in the emergency department, are there any other jobs you can't perform? A: No."). Therefore, even if working in the Emergency Department triggered uncontrollable asthma, that Ellis could mitigate this effect by working in a different location means that she is not disabled under the law. See Haynes, 392 F.3d at 483. For this reason, Dr. Lerner's observation that the "intense anxiety" Ellis feels about returning to the Emergency Department could make her asthma "much more difficult to control," Lerner Report at 3, does nothing to aid her assertion that she is disabled. Ellis simply offers no evidence that she suffers from a physical impairment that

substantially limits her breathing.[6]

B.   A Record of Impairment

Ellis next offers that she has "record of impairment" because she "has a history of asthma that dates back more than 10 years" and has a "unique family history that plays heavily in Plaintiff's anxiety and psychosocial triggers of her asthma attacks." Pl.'s Opp'n at 21; see also 29 C.F.R. § 1630.2(k) ("record of impairment" where individual "has a history of . . . a mental or physical impairment that substantially limits one or more major life activities"). But "evidence of a prior illness, without more, is insufficient to show a record of disability." Adams, 531 F.3d at 946. Instead, Ellis "must show that her alleged impairment substantially limited one or more major life activities." Id. (internal quotation marks omitted); accord Equal Employment Opportunity Comm'n v. R.J. Gallagher Co., 181 F.3d 645, 655 (5th Cir. 1999) ("[I]t is not enough for [a] ... plaintiff to simply show that he has a record of a cancer diagnosis; in order to establish the existence of a 'disability' . . . there must be a record of an impairment that substantially limits one or more of the . . . plaintiff's major life activities."). Yet the evidence Ellis offers in support of her contention that she has a record of impairment establishes only that she has a history of asthma. There is nothing in her medical or family history that indicates that

---

[6] In her opposition, Ellis for the first time appears to argue that her asthma also substantially limits her in the major life activity of working. See Pl.'s Opp'n at 21. But even were the Court to consider this new theory, there is no evidence that Ellis was so limited. To be substantially limited in the activity of working under the law, "'one must be precluded from more than one type of job, a specialized job, or a particular job of choice.'" Thompson, 422 F. Supp. 2d at 171 (quoting Sutton, 527 U.S. at 492). Here, there is no evidence that Ellis's asthma broadly precluded her work in this way. Indeed, she admits that the only part of her job at Georgetown that she could not perform was working in the Emergency Department. See Ellis Dep. at 139:5-8. And she testifies that she had worked at several hospitals prior to her employment with Georgetown. See id. at 7:21-21:8 (describing previous work at other hospitals).

her asthma substantially impairs her breathing. And the Court has already found there is no other evidence in the record to demonstrate that this is the case. Accordingly, Ellis has not demonstrated that she qualifies as disabled pursuant to a record of impairment.[7]

    C.    <u>Regarded as Having an Impairment</u>

Ellis lastly contends that Georgetown regarded her as having a disability. To prevail on this theory, Ellis must show that her employer either "mistakenly believes that [she] has a physical impairment that substantially limits one or more major life activities" or "mistakenly believes that an actual, non-limiting impairment substantially limits one or more major activities." <u>Sutton</u>, 527 U.S. at 489. Proving that an employee is regarded as disabled in a major life activity "takes a plaintiff to the farthest reaches of the ADA." <u>Dillon v. Mountain Coal Co., L.L.C.</u>, 569 F.3d 1215, 1219 (10th Cir. 2009).

Ellis suggests that Georgetown must have regarded her as disabled because it "did not discuss alternative positions within the hospital; it simply terminated her when she requested an accommodation." Pl.'s Opp'n at 21-22; <u>see also</u> Pl.'s Mot. to Supplement Opp'n ("Pl.'s Supplement") [Docket Entry 51], Ex. 1 (Supplement), 1-2.[8] In other words, according to Ellis,

---

[7] In any event, it is not clear that she may make use of the "record of impairment" theory to demonstrate that she is disabled. "The 'record of [impairment]' definition was tailor-made for plaintiffs who . . . claim they once suffered from a physical or mental impairment that substantially limited a major life activity, recovered from the impairment, but nonetheless faced employment discrimination because of it." <u>Adams</u>, 531 F.3d at 945-46; <u>see also</u> S. Rep. No. 93-1297, at 38-39 (record of impairment theory "make[s] clear[] that the [Act's] coverage ... extends to persons who have recovered-in whole or in part-from a handicapping condition, such as a mental or neurological illness, a heart attack, or cancer"). Ellis is not one of those plaintiffs, as she <u>currently</u> suffers from asthma.

[8] In reviewing the parties' summary judgment submissions, the Court found that a page from Ellis's deposition that Georgetown had cited in its motion was not included in the exhibits it filed with that motion. Accordingly, the Court ordered Georgetown to submit a new version of

-10-

the fact that Georgetown fired her is evidence that it regarded her as disabled. But if this were sufficient, by itself, to show that an employer regarded an employee as disabled, then the employee would always be able to demonstrate she was disabled simply by pointing to the adverse action. That is not the law. See Adams, 531 F.3d at 945 ("Adams argues that by denying her a Class 1 medical clearance the State Department revealed that it regarded her as unable to hold a host of other government jobs requiring similar clearances, but such an interpretation would mean that every Foreign Service candidate denied a Class 1 medical clearance would be disabled under the Rehabilitation Act.").

Instead, courts require specific evidence that an employer believed an employee's disability substantially limited a major life activity. See id.; see also Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 156 (1st Cir. 2009) (employee offered affidavits from coworkers indicating they thought plaintiff could not perform her job safely as a result of a disability); Nichols v. Billington, 402 F. Supp. 2d 48, 79 (D.D.C. 2005) (employee demonstrated that employer regarded her as disabled by pointing to the fact that employer made substantial changes to the plaintiff's work area to alleviate her discomfort). Here, such evidence is absent. And the only evidence in the record suggests that Georgetown did not regard her as disabled -- Ellis conceded at her deposition that she could not recall anyone treating her as if she were

---

the deposition that included the missing page. Ellis subsequently moved to supplement her reply, arguing that "[t]he late submission of this exhibit did not permit Plaintiff the opportunity to see the testimony in its full context." Pl.'s Supplement at 1. But the missing page was from Ellis's own deposition, and certainly she is familiar with the deposition's entire contents. To now argue that she was prejudiced because Georgetown failed to file a certain page of that deposition with its motion for summary judgment is dubious at best. Nevertheless, the Court will grant Ellis's motion and permit her to file her supplement, which largely rehashes the arguments she deploys in her opposition to Georgetown's motion for summary judgment.

disabled:

> Q: Did anyone at Georgetown treat you like you were disabled?
>
> A: Not to my recollection.

Ellis Dep. at 268:19-21.

* * * * *

There is no evidence in the record, then, by which a reasonable jury could conclude that Ellis's asthma was a disability under any of the ADA's three definitions of that term. The Court therefore will grant Georgetown's motion for summary judgment on the discrimination claims.[9]

## II. Retaliation

Although Ellis is not disabled under the law, she may still assert a retaliation claim against Georgetown. See Zeigler v. Potter, 641 F. Supp. 2d 25, 29 (D.D.C. 2009) (citations omitted) (in claim under ADA or Rehabilitation Act, "a plaintiff's good-faith request for accommodations is protected activity and . . . the denial of such accommodations can be retaliatory even if it is ultimately determined plaintiff is not disabled"); see also Grant, 786 A.2d at 586 (same under DCHRA). The Court considers Ellis's retaliation claim under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff must first establish a prima facie case of retaliation by establishing "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007).

---

[9] Accordingly, the Court need not evaluate Georgetown's alternative arguments in support of its contention that its actions were not discriminatory.

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory explanation for its actions. See Smith v. District of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005). In doing so, the defendant "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it [retaliated] against the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981) (citation omitted).

But where a defendant offers a legitimate, non-retaliatory reason for its actions, "the district court need not -- and should not -- decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Rather, the sole inquiry becomes "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the plaintiff on a prohibited basis." Adeyemi, 525 F.3d 1222, 1226 (D.C. Cir. 2008). In evaluating whether the plaintiff may overcome summary judgment, "the court reviews each of the three relevant categories of evidence -- prima facie, pretext, and any other -- to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation." Jones v. Bernanke, 557 F.3d 670, 679 (D.C. Cir. 2009) (quoting Waterhouse v. Dist. of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002)).

Ellis alleges that Georgetown terminated her in retaliation for requesting an accommodation -- namely, to no longer work in the Emergency Department. Georgetown, however, offers a legitimate, non-retaliatory reason for her termination: "plaintiff's failure to follow her employer's instruction." Def.'s Mem. at 33; see also Aug. 2, 2006 Termination Letter

-13-

(indicating that Georgetown terminated Ellis for failing to follow her supervisor's instructions and concealing information from her supervisors). Thus, pursuant to Brady, the Court looks to the totality of the evidence in the record to determine whether Georgetown's asserted justification for Ellis's termination merely disguises retaliation. Here, Ellis has provided sufficient evidence to create a material dispute on the issue of retaliation.

For one, when Ellis first apprised Beckett that she could no longer work in the Emergency Department, Beckett responded that Georgetown and Ellis would have to "part ways":

> Q: Did she say, Ms. Ellis, that you would need to part ways, or did she say that you were hired initially to work in the emergency room?
>
> A. No. She stated that we would need to part ways if I was not able to work in the emergency room.
>
> Q: And is that a quote?
>
> A. That is a quote, yes.

Ellis Dep. at 105:7-14. In other words, according to Ellis, Beckett's first response to Ellis's request for an accommodation was to declare that Ellis must leave her employment.[10] Moreover, Georgetown terminated Ellis just a week after Ellis first requested an accommodation: Ellis indicated that she could no longer work in the Emergency Department during her July 26 phone

---

[10] To be sure, Georgetown contends that even if Beckett used the phrase "part ways," she subsequently "instructed Plaintiff to follow Hospital procedures and bring in her medical documentation and request for accommodation to Employee Health for review and evaluation, which is exactly what Ms. Beckett was required to do." Def.'s Reply in Supp. of Mot. for Summ. J. [Docket Entry 49], at 15. In other words, according to Georgetown, instructing Ellis to follow hospital procedure negated the import of the "part ways" language. This may be so, but it is the jury's, and not the Court's, role to make this determination. See Desmond v. Mukasey, 530 F.3d 944, 963 (D.C. Cir. 2008) ("[A]t the summary judgment stage, a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts -- these are jury functions . . . ." (internal quotation marks omitted)).

call with Beckett, see Ellis Dep. at 105:1-6, and Georgetown terminated her on August 2, see Aug. 2, 2006 Termination Letter. See generally Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007) (jury could infer causation where less than a month elapsed between protected activity and adverse action).

Given that only a week elapsed between Ellis's request for accommodation and her termination, and coupled with Beckett's "part ways" statement, a reasonable jury could conclude that Georgetown terminated Ellis for requesting an accommodation. See Jones, 557 F.3d at 680 ("[A]n adverse action following closely on the heels of protected activity may in appropriate cases support an inference of retaliation.").[11] Although a jury may ultimately choose to believe Georgetown's explanation for Ellis's termination -- that she was fired for misconduct -- rather than Ellis's explanation, "at this stage [the Court] refrain[s] from making credibility determinations, weighing the evidence, or drawing inferences from the evidence." Jones, 557 F.3d at 681.[12]

---

[11] Ellis's alleged misconduct does not necessarily break "any causal link between [her] request [for accommodation] and the decision to fire [her]." Def.'s Mot. at 34. In any event, the parties disagree about whether at least some of Ellis's alleged misconduct actually occurred. According to Georgetown, Ellis was fired in part because she had failed to follow Beckett's instructions to remain at the hospital while waiting for an accommodation decision. See Aug. 2, 2006 Termination Letter. Ellis, however, denies that she was required to remain in the hospital, and instead remembers Beckett permitted her to go home pending the decision. See Ellis Dep. at 116:14-117:13.

[12] In support of her retaliation claim, Ellis also contends that Beckett demonstrated "an obvious animus towards Plaintiff's request to not work in the [Emergency Department]" because Beckett would not discuss Ellis's medical condition. See Pl.'s Opp'n at 26. But Beckett suggests that she only did so because she was following hospital protocol: "[t]hat's something for [employees] to discuss with employee health." Beckett Dep. at 64:18-19. And Ellis has offered no evidence that Beckett's explanation of hospital protocol is incorrect.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Georgetown's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

/s/<br>
John D. Bates<br>
United States District Judge

Dated: <u>July 12, 2010</u>